UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CITIZENS AWARENESS NETWORK, INC., <br> Plaintiff, <br><br> v. <br><br> UNITED STATES OF AMERICA, UNITED STATES NUCLEAR REGULATORY COMMISSION, <br> Defendant. | No. 04cv30114-MAP |

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS

The defendants, the United States of America and the United States Nuclear Regulatory Commission ("NRC"), submit this memorandum of law in support of their motion to dismiss the plaintiff's Freedom of Information Act ("FOIA") complaint as moot.

### BACKGROUND

On March 4, 2004, the plaintiff submitted a FOIA request to the NRC seeking a "note from Howard K. Shapar to Joseph Hennessey dated April 3, 1997. Complaint ¶ 5, Ex. A. The NRC initially denied the request. After the plaintiff appealed, the NRC produced a portion of the document and withheld the remainder under FOIA exemption 5, which exempts from disclosure documents protected by the attorney-client privilege.[1] Complaint ¶¶ 6-9.

---

[1] Exemption 5 protects "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." Courts have construed this provision to exempt documents that are normally privileged in the discovery context.

On June 16, 2004, the plaintiff filed the instant lawsuit challenging the partial withholding. The complaint seeks injunctive relief in the form of release of the entire document. The complaint also requests an award of attorneys' fees and costs. The complaint was served on the defendants on or about June 25, 2004. On July 23, 2004, the NRC waived the attorney-client privilege and produced the document to the plaintiff. Ex. 1.

ARGUMENT

The plaintiff's lawsuit should be dismissed because the NRC's release of the entire document rendered the lawsuit moot. "'Even if an actual case or controversy exists at the inception of litigation, a case may be rendered moot (and, therefore, subject to dismissal) if changed circumstances eliminate any possibility of relief.'" Maine State Building and Construction Trades Council, AFL-CIO v. United States Department of Labor, 359 F.3d 14, 17 (1st Cir. 2004), quoting Maine School Admin. Dist. No. 35 v. Mr. and Mrs. R., 321 F.3d 9, 19 (1st Cir. 2003). "Where the relief sought is injunctive in nature, "this ordinarily means that once the act sought to be enjoined occurs, the suit must be dismissed as moot." Id.

In the instant case, the plaintiff seeks injunctive relief in the form of release of a note from Howard K. Shapar to Joseph Hennessey dated April 3, 1997. Since the NRC has now released the document, the suit must be dismissed as moot. Id. See also

Landers v. Department of the Air Force, 257 F.Supp.2d 1011 (S.D. Ohio 2003) (production of documents pursuant to FOIA request renders lawsuit moot).

Moreover, any motion by the plaintiff for attorney's fees would be unavailing in light of the Supreme Court's decision in Buckhannon Board & Care Home, Inc. V. West Virginia Department of Health and Human Resources, 532 U.S. 598 (2001), which held that a party prevails for the purpose of attorney's fees only if awarded relief by the court. Buckhannon instructs that there is no eligibility for attorney fees unless a party obtains court-ordered relief on the merits of his complaint that results in a material alteration of the legal relationship between the parties. The same rule applies to eligibility for costs. See Oil, Chemical and Atomic Workers v. D.O.E., 288 F.3d 452, 456-57 (D.C. Cir. 2002)[2] (plaintiffs must be awarded relief by court to be eligible for attorneys fee award under FOIA); Landers, 257 F.Supp.2d at 1012 (plaintiff not entitled to attorney's fees under FOIA even though lawsuit was the catalyst for the release of documents since the relief was not awarded by the court); McSheffrey v. Executive Office for United States Attorneys, Slip Op. No. 02-5401, 2003 WL 21538054 (D.C. Cir. July 2, 2003) (per curiam) (attached) (no distinction between requirements for recovering attorney fees and litigation costs, and ruling that to

---

[2]The D.C. Circuit is the court of universal venue for FOIA actions.

obtain either, there must be a "judgment on the merits or ... a court-ordered consent decree").

For these reasons, the plaintiff's complaint should be dismissed.

                                Respectfully submitted,

                                MICHAEL J. SULLIVAN
                                United States Attorney

By:    /s/ Karen L. Goodwin
                                KAREN L. GOODWIN
                                Assistant U.S. Attorney
                                1550 Main Street, Room 310
                                Springfield, MA 01103-1422
DATED: August 9, 2004        (413) 785-0269

## CERTIFICATE OF SERVICE

This is to certify that I have this day served upon the person listed below a copy of the foregoing document by depositing in the United States mail a copy of same in an envelope bearing sufficient postage for delivery:

    Jonathan M. Block, Esquire
    94 Main Street
    P.O. Box 566
    Putney, VT 05346-0566

    Robert L. Quinn, Esquire
    Egan, Flanagan and Cohen, P.C.
    67 Market Street
    P.O. Box 9035
    Springfield, MA 01102-9035

This 9th day of August, 2004.   /s/ Karen L. Goodwin
                                            KAREN L. GOODWIN
                                            ASSISTANT UNITED STATES ATTORNEY

Not Reported in F.3d
2003 WL 21538054 (D.C.Cir.)
**(Cite as: 2003 WL 21538054 (D.C.Cir.))**
**C**

Page 1

Only the Westlaw citation is currently available.

United States Court of Appeals, District of Columbia Circuit.

John Patrick **MCSHEFFREY,** Appellant
v.
EXECUTIVE OFFICE FOR THE UNITED STATES ATTORNEYS, Freedom of Information/Privacy Act Unit, et al., Appellees

No. 02-5401.

July 2, 2003.

Requestor filed action against United States Attorneys' Office pursuant to the Freedom of Information Act (FOIA). The United States District Court for the District of Columbia entered judgment in favor of government, and denied requestor's motion for costs. Government filed motion for summary affirmance, which requestor opposed by motion for summary reversal. The Court of Appeals held that requestor did not substantially prevail, and was not awarded some degree of relief under FOIA, to be eligible to recover costs.

Plaintiff's motion denied; defendant's motion granted.

Records ⚖68

326k68

District court properly denied requestor's motion for costs under Freedom of Information Act (FOIA); requestor did not substantially prevail by judgment on the merits or by court-ordered consent decree, and was not awarded some degree of relief under FOIA, to be eligible to recover costs. 5 U.S.C.A. § 552(a)(4)(E).

BEFORE: ROGERS, TATEL, and ROBERTS, Circuit Judges.

*ORDER*

PER CURIAM.

*1 Upon consideration of the motion for summary affirmance, the opposition thereto, and the reply; and the motion for summary reversal, the opposition thereto, and the reply, it is

ORDERED that the motion for summary affirmance be granted and the motion for summary reversal be denied. The merits of the parties' positions are so clear as to warrant summary action. *See Taxpayers Watchdog. Inc. v. Stanley,* 819 F.2d 294, 297 (D.C.Cir.1987) (per curiam). The district court properly denied appellant's motion for costs. The provision governing recovery of costs in Freedom of Information Act (FOIA) cases, 5 U.S.C. § 552(a)(4)(E), does not distinguish between requests for fees and requests for "other litigation costs": to be eligible to recover either, a plaintiff must have "substantially prevailed." As this court made clear in *Oil. Chem. & Atomic Workers Int'l Union v. Department of Energy,* 288 F.3d 452 (D.C.Cir.2002), this standard requires a plaintiff to have "been awarded some relief by a court, either in a judgment on the merits or in a court-ordered consent decree." *Id.* at 456-57 (internal quotations and alteration omitted). Appellant has not been awarded any such relief.

Moreover, this case is not governed by *Mansfield, C. v. L.M.R. Co. v. Swan,* 111 U.S. 379, 4 S.Ct. 510, 28 L.Ed. 462 (1884), in which the Court awarded costs, for equitable reasons, to plaintiffs who had lost the appeal. *Mansfield* addressed recovery of costs under the common law rule, not a fee-shifting provision like § 552(a)(4)(E). *See Mansfield,* 111 U.S. at 387 (question whether to award costs was "not covered by any statutory provision," and thus had to be "settled on other grounds"). Unlike the common law, § 552(a)(4)(E) limits those eligible to recover costs to plaintiffs who have "substantially prevailed," an express limitation that, under *Oil. Chem. & Atomic Workers,* requires the plaintiff to have been awarded some relief by a court.

Pursuant to D.C. Circuit Rule 36, this disposition will not be published. The Clerk is directed to withhold issuance of the mandate herein until seven days after resolution of any timely petition for rehearing or petition for rehearing en banc. *See* Fed. R.App. P. 41(b); D.C.Cir. Rule 41.

2003 WL 21538054 (D.C.Cir.)

END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

**UNITED STATES**
# NUCLEAR REGULATORY COMMISSION
WASHINGTON, D.C. 20555-0001

July 23, 2004

OFFICE OF THE
SECRETARY

Jonathan M. Block, Esq.
94 Main Street
P.O. Box 566
Putney, VT 053436-0566

IN RESPONSE REFER
TO FOIA-2004-004A
(FOIA-2004-0160)

Dear Mr. Block:

This is in further response to your letter dated April 27, 2004, to the Freedom of Information Act/Privacy Act Officer, in which you appealed the NRC's April 15, 2004, response to your Freedom of Information Act (FOIA) initial request 2004-0160, dated March 15, 2004. You requested a copy of a note from Howard Shapar to Joseph Hennessey dated April 3, 1967 "in which Mr. Shapar explains to Mr. Hennessey "at length" why 'the Commission has consistently interpreted the provision [section 189a of the Atomic Energy Act] to require a trial-type hearing'." This record was denied on the basis of exemption 5, as attorney-client privileged information.

You appealed the denial and your appeal was granted in part, and denied in part. The document in question was a privileged communication between Mr. Shapar, former staff attorney with the then-Atomic Energy Commission (AEC) and Mr. Hennessey, AEC General Counsel at that time. The bulk of this document already has been provided to you in redacted form. The withheld portion of the document consisted of qualified legal opinion concerning proposed legislation not germane to your interest. Although it was determined that there was proper authority to withhold the entire document from public disclosure under Exemption 5, I had decided, nonetheless, to make a discretionary release of the portion of the document dealing with section 189a of the Atomic Energy Act, while continuing to withhold the remainder.

Upon full and deliberate consideration, and without conceding your entitlement to it as a matter of law, I have decided to waive the privilege regarding this document and make a discretionary disclosure of the remainder of the document. Therefore, the document is now released in the entirety. A complete, unredacted copy of this document is enclosed.

Sincerely,

Annette L. Vietti-Cook
Secretary of the Commission

Enclosure: As stated

cc:   Karen L. Goodwin, Esq.
      John F. Cordes, Jr., Esq.

EXHIBIT 1

1

\<date\> 19670403 \</date\>
\<to\> Hennessey \</to\>
\<from\> Shapar, Howard \</from\>
\<subject\> MANDATORY HEARING REQUIREMENTS OF SECTION 189 OF THE ATOMIC ENERGY ACT; SUBJECTION OF SUCH HEARINGS TO SECTION 5 OF THE APA AND SECTION 5(a) OF S. 518 \</subject\>

DOC-NO: OGC-198

DATE: 04/03/67

TYPE: Internal OGC

TO: Mr. Hennessey

FROM: Howard K. Shapar

SUBJECT: MANDATORY HEARING REQUIREMENTS OF SECTION 189 OF THE ATOMIC ENERGY ACT; SUBJECTION OF SUCH HEARINGS TO SECTION 5 OF THE APA AND SECTION 5(a) OF S. 518

PAGES: 005

During the testimony of Arthur Gehr before the Subcommittee on Administrative Practice and Procedure of the Senate Judiciary Committee on S. 518, a bill to amend the Administrative Procedure Act, there was some discussion between him and Bernard Fernsterwald, the counsel of the subcommittee, as to whether our section 189 hearings on reactor license applications might not fall within the scope of section 5(b) of the APA, as it would read after the passage of S. 518.

Provisions of the APA and S. 518 relating to adjudications

Section 5 of the Administrative Procedure Act contains provisions (relating to, among other things, separation of functions) which are applicable 'in every case of adjudication required by statute to be determined on the record after opportunity for an agency hearing,' with certain exceptions not pertinent here. Sections 7 and 8 contain provisions applicable to hearings and decisions in cases subject to section 5. The Administrative Procedure Act does not now contain any provisions specifically applicable to adjudications other than those 'required by statute to be determined on the record after opportunity for an agency hearing,' i.e., formal adjudications.

S. 518 includes, with some important changes not relevant to the immediate discussion, the provisions applicable to formal adjudications in section 5 of the present APA in section 5(a) of the bill. In addition, a new section 5(b) would be added, applicable to 'all other adjudications' which, in general, would direct the agency to provide procedures which shall promptly, adequately and fairly inform the agency and the parties of the issues, facts and arguments involved. Section 5(b) contains no provisions relating to separation of functions. Under S. 518, sections 7 and 8 would be applicable to cases subject to section 5(a) but not to cases subject to section 5(b).

Subjection of AEC hearings under section 189 of the Atomic Energy Act to section 5 of the present APA and section 5(a) of the APA as revised by S. 518

Section 189 a. of the Atomic Energy Act provides, in pertinent part:

'The Commission shall hold a hearing after thirty days' notice and publication once in the Federal Register, on each application under section 103 or 104 b. for a construction permit for a facility, and on any application under section 104 c. for a construction permit for a testing facility.'

A mandatory hearing requirement for the issuance of facility licenses was first added to the Act in 1957 (P.L. 85-256, sec. 7). A hearing was required on each application for a license under section 103 and 104 b. and on each application for a license for a testing facility under section 104 c. While the language of section 189 a. did not then, and does not now, specifically state that the hearing and adjudication shall be 'on the record' and in conformity with sections 5, 7 and 8 of the APA, the legislative history of section 189 indicates that such a hearing and adjudication were intended, and the Commission has so interpreted the provision.

In introducing S. 1684, which contained the mandatory hearing requirement enacted in P.L. 87-256, Senator Anderson stated:

'When the Atomic Energy Act was amended 3 years ago, I made the following statement on the floor of the Senate on July 14, 1954, expressing my opinion as to the advisability of public hearings on reactor license applications:

'. . . But because I feel so strongly that nuclear energy is probably the most important thing we are dealing with in our industrial life today, I wish to be sure that the Commission has to do its business out of doors, so to speak, where everyone can see it.

'Although I have no doubt about the ability and integrity of the members of the Commission, I simply wish to be sure they have to move where everyone can see every step they take; and if they are to grant a license in this very important field, where monopoly could so easily be possible, I think a hearing should be required and a formal record should be made regarding all aspects, including the public aspects.'

'Almost 3 years have now passed and I believe my words of 1954 are still applicable.' (emphasis added) (Cong. Record, March 21, 1957, p. 3616)

In carrying out the requirement of the 1957 amendment to hold hearings in cases involving power and test reactor licenses, the Commission took the view that the hearing and decision had to be in compliance with the provisions of sections 5, 7 and 8 of the APA. The Commission's position was articulated, among other times, when amendments to the Act, which resulted, in 1962, in some liberalizing of the mandatory hearing requirement, were under consideration.

At the conclusion of the hearings which preceded the enactment of the amendments, a panel discussion among Commissioner Olson, Professor Kenneth C. Davis, Professor David F. Cavers, Mr. Lee Hydeman and Dr. Theos J. Thompson was conducted (Radiation Safety and Regulation, Hearings before the Joint Committee on Atomic Energy, 87th Cong., 1st Sess., pp. 372-389). Professor Davis took issue with the Commission's view that section 189 required a trial-type hearing. Commissioner Olson reiterated the Commission position that a formal hearing of record is required, submitting for the record an AEC memorandum in support (Id., pp. 382-5).

3

After the close of the hearings, the exchange between Professor Davis and the Commission continued, through letters to the JCAE staff, publication by Professor Davis of an article in the American Bar Association Journal, and replies thereto. In the course of this exchange, General Counsel naiden, in a letter dated September 6, 1961 to Mr. Ramey as executive director of the JCAE, stated that 'Section 189(a) of the Atomic Energy Act explicitly requires a hearing on the record conducted in accordance with the APA. For the Commission to have made any other interpretation would have been inconsistent with what we believe to have been the intent of Congress in adopting the mandatory hearing requirement.'

The Congress, in effect, ratified the Commission's interpretation of the mandatory hearing requirement when it passed the 1962 amendments to the Act. One of these amendments was the addition of section 191 to the Act. That section provides, in part:

'a. Notwithstanding the provisions of sections 7(a) and 8(a) of the Administrative Procedure Act, the Commission is authorized to establish one or more atomic safety and licensing boards, each composed of three members, two of whom shall be technically qualified and one of whom shall be qualified in the conduct of administrative proceedings, to conduct such hearings as the Commission may direct and make such intermediate or final decisions as the Commission may authorize with respect to the granting, suspending, revoking or amending of any license or authorization under the provisions of this Act, any other provision of law, or any regulation of the Commission issued thereunder.' (Emphasis supplied)

Since sections 7 and 8 of the APA are applicable only to adjudications required to be determined on the record after opportunity for agency hearing which are subject to provisions of section 5 of the APA, an exception from the requirements of subsections 7(a) and 8(a) to permit the use of atomic safety and licensing boards in lieu of hearing examiners would not have been necessary unless the hearings to be conducted and adjudications to be made by the boards were considered to be subject to section 5. The report which accompanied the amendments as enacted so stated the understanding of Congress in explaining the exceptions:

'This language ('notwithstanding the provisions of sections 7(a) and 8 of the Administrative Procedure Act') is intended only to provide the Commission with specific authority to use a three-man Board to preside at hearings in lieu of a hearing examiner, and to permit final, as well as intermediate decisions to be made by the Board . . .

'The great bulk of the provisions of the Administrative Procedure Act will remain applicable, pursuant to section 181 of this act, and the only exceptions authorized by these amendments are to permit the Board to preside at hearings in lieu of a hearing examiner, and to permit the Board to render final as well as intermediate decisions.' (U.S. Code, Congressional and Administrative News, 87th Cong., 2nd Sess., 1962, p. 2213)

In view of the foregoing, it would appear difficult for the Commission to take the position, at this point, that the mandatory hearings under section 189 are not subject to sections 5, 7 and 8 of the APA as adjudications required to be determined on the record after opportunity for an agency hearing. Therefore, those adjudications would be subject to section 5(a) of the APA as revised by S. 518 rather than section 5(b).

Possible ways of bringing AEC adjudications under section 189 of the Act under section 5(b) of the APA as revised by S. 518

4

There are several ways in which our adjudications under section 189 could be brought under section 5(b) rather than section 5(a) of S. 518. One alternative would be to amend section 189 of the Act to eliminate the requirement for a hearing except 'upon the request of any person whose interest may be affected by the proceeding,' as presently provided in the first sentence of section 189 a. (This would do away with the so-called 'mandatory hearing.') Such an amendment of the Act would mean that licensing proceedings in which no interested person requested a hearing would be subject to section 5(b) rather than section 5(a). Another alternative would be to amend section 189 of the Atomic Energy Act to provide that while the Commission must hold a hearing on each application for a power or testing facility, in the absence of a request by a person whose interest may be affected that hearing need not be an on-the-record hearing subject to the requirements of sections 5(a), 7 and 8.

The problem might also be approached by revising S. 518 to except from the requirements of sections 5(a), 7 and 8 AEC facility licensing proceedings in which no request for a hearing is made by a party whose interest may be affected by the proceeding. The effect of such an exception would be to make our uncontested facility license proceedings subject to section 5(b), even though the legislative history of section 189 of the Atomic Energy Act indicates that Congress intended that such proceedings be subject to the APA requirements for formal adjudications.

If it appeared to be politically (or otherwise) infeasible to bring our section 189 hearings within the scope of section 5(b) and out of the scope of sections 5(a), 7 and 8, our most serious problems with the S. 518 changes in sections 5(a), 7 and 8 of the APA could be met by an exception for initial licensing proceedings, or uncontested initial licensing proceedings, from the requirements of section 5(a)(6), dealing with separation of functions, and revision of section 8 along the lines suggested in Commissioner Ramey's testimony and our formal comments - making the establishment of appeal boards optional, and restoring the right of the agency to review an initial decision on its own initiative without restriction .