# List of Exhibits

| Exhibit | Description |
| --- | --- |
| 'A' | CAN's Electronic Filing of FOIA Request (March 15, 2004) |
| 'B' | NRC Form 464 Denial of FOIA Request (April 15, 2004) |
| 'C' | CAN's Letter Transmitting Appeal of NRC FOIA Denial (April 27, 2004) |
| 'D' | CAN's Appeal of NRC FOIA Denial (Docketed April 28, 2004) |
| 'E' | NRC's Letter Partially Granting CAN's FOIA Request (May 11, 2004) |
| 'F' | Document NRC Provided Under Partial Grant of FOIA Request |

EXHIBIT A

FOIA/PA REQUEST
Case No. 2004-0160
Date Recd. 3-15-04
Action Off: POOL
Related Case: —

**From:** uid no body <nobody@nrc.gov>
**To:** <foia@nrc.gov>
**Date:** Mon, Mar 15, 2004 1:30 PM
**Subject:** WWW Form Submission

Below is the result of your feedback form. It was submitted by

() on Monday, March 15, 2004 at 13:29:53

---------------------------------------------------------------------------

FirstName: Jonathan

LastName: Block

Company/Affliation:

Address1: 94 Main Street

Address2: P.O. Box 566

City: Putney

State: VT

Zip: 05346-0566

Country: United_States

Country-Other:

Email: jonb@sover.net

Phone: 8023872646

Desc: A note from Howard K. Shapar to Joseph Hennessey (dated April 3, 1967) in which Mr. Shapar explains to Mr. Hennessey "at length" why "the Commission has consistently interpreted the provision [section 189a of the Atomic Energy Act] to require a trial-type hearing."
This record is referenced in footnote 4 of a memorandum from Howard K. Shapar to NRC Chairman AHearne, "Prior Notice Requirement for Rule Change" (June 19, 1980), which is one of the enclosures attached to 70-143 (6/27/80), memo from Commission Peter A. Bradfor to Service List NFS-Erwin Proceeding (June 27, 1980).

FeeCategory: Educational

MediaType:

FeeCategory_Description:

Expedite_ImminentThreatText:

Expedite_UrgencyToInform: on

Expedite_UrgencyToInformText: The information in this request relates directly to whether there is any truth in the NRC's claim--in support of its recent rulemaking changing Part 2 adjudicatory rules--that there

EXHIBIT
PLAINTIFF'S
A

is no congressional requirement for formal hearing processes.
If the requested record information contains the information indicated in the source for this request, a copy of the record and the information in it will be placed before a United States Court of Appeal reviewing the legality of the rule. This information is needed as soon as possible for briefing this matter to the Court.

Waiver_Purpose: Record will be provided to a Court of the United States Court of Appeals.

Waiver_ExtentToExtractAnalyze: If the record contains the information stated in the document referring to it, it will be used in its entirety and referred to in presenting that information to a reviewing court.

Waiver_SpecificActivityQuals: The records will be used in preparation for a case of judicial review of the NRC's recent rulemaking altering the adjudicatory process available to members of the public interested in NRC licensing proceedings. They are part of research into the legislative and agency history of the meaning of section 189a of the Atomic Energy Act of 1954 and as amended. The requester is an experienced attorney who represents a non-profit public interest organization that is seeking judicial review of the recent rulechange. As in previous use of similar material, it will become part of the public record of the case and will also be disseminated as widely as possible through the organization's website.

Waiver_ImpactPublicUnderstanding: If this document contains the information that the referring document states that it does it will provide an extremely crucial insight into the reasons why the AEC claimmed that Congress intended there be a formal hearing process even though the Atomic Energy Act on its face appears silent on that point.

Waiver_NatureOfPublic: All persons who may be affected by the recent NRC rulemaking altering the adjudicatory process--am extremely substantial number of persons--could be affected by release of this information for the indicated intended purposes. In addition, the judges on the panel in the United States Court of Appeal that hears this case will also have a different understanding of the issues on the basis of having access to this document.

Waiver_MeansOfDissemination: The document will be disseminated to the general public by becomming part of the public record in a judicial review of NRC action and will also be available on the requesting organization's web site.

Waiver_FreeToPublicOrFee: Access to information will be free of charge.

Waiver_PrivateCommericalInterest: There is no commerical or private interest. The information will be used by a public interest, non-profit organization whose pruposes are eductional. The information will become part of the public record in the case and generally available to any interested person at no charge on the organization's website.

---------------------------------------------------------------------------

NRC FORM 464 Part I (6-1998)

U.S. NUCLEAR REGULATORY COMMISSION FOIA/PA

# RESPONSE TO FREEDOM OF INFORMATION ACT (FOIA) / PRIVACY ACT (PA) REQUEST

| FOIA/PA | RESPONSE NUMBER |
|---|---|
| 2004-0160 | 1 |

RESPONSE TYPE: ☑ FINAL ☐ PARTIAL

REQUESTER: Jonathan Block

DATE: APR 15 2004

## PART I. -- INFORMATION RELEASED

- ☐ No additional agency records subject to the request have been located.
- ☐ Requested records are available through another public distribution program. See Comments section.
- ☐ APPENDICES [ ] Agency records subject to the request that are identified in the listed appendices are already available for public inspection and copying at the NRC Public Document Room.
- ☐ APPENDICES [ ] Agency records subject to the request that are identified in the listed appendices are being made available for public inspection and copying at the NRC Public Document Room.
- ☐ Enclosed is information on how you may obtain access to and the charges for copying records located at the NRC Public Document Room, 2120 L Street, NW, Washington, DC.
- ☐ APPENDICES [ ] Agency records subject to the request are enclosed.
- ☐ Records subject to the request that contain information originated by or of interest to another Federal agency have been referred to that agency (see comments section) for a disclosure determination and direct response to you.
- ☐ We are continuing to process your request.
- ☐ See Comments.

## PART I.A -- FEES

AMOUNT * $

* See comments for details

- ☐ You will be billed by NRC for the amount listed.
- ☐ You will receive a refund for the amount listed.
- ☑ None. Minimum fee threshold not met.
- ☐ Fees waived.

## PART I.B -- INFORMATION NOT LOCATED OR WITHHELD FROM DISCLOSURE

- ☐ No agency records subject to the request have been located.
- ☑ Certain information in the requested records is being withheld from disclosure pursuant to the exemptions described in and for the reasons stated in Part II.
- ☑ This determination may be appealed within 30 days by writing to the FOIA/PA Officer, U.S. Nuclear Regulatory Commission Washington, DC 20555-0001. Clearly state on the envelope and in the letter that it is a "FOIA/PA Appeal."

## PART I.C COMMENTS (Use attached Comments continuation page if required)

SIGNATURE - FREEDOM OF INFORMATION ACT AND PRIVACY ACT OFFICER

Carol Ann Reed [signature] (for)

EXHIBIT
PLAINTIFF'S
B

 PRINTED ON RECYCLED PAPER

This form was designed using InForms

NRC FORM 464 Part II (6-1998) U.S. NUCLEAR REGULATORY COMMISSION

# RESPONSE TO FREEDOM OF INFORMATION ACT (FOIA) / PRIVACY ACT (PA) REQUEST

FOIA/PA 2004-0160

DATE APR 15 2004

## PART II.A -- APPLICABLE EXEMPTIONS

APPENDICES A

Records subject to the request that are described in the enclosed Appendices are being withheld in their entirety or in part under the Exemption No.(s) of the PA and/or the FOIA as indicated below (5 U.S.C. 552a and/or 5 U.S.C. 552(b)).

- [ ] Exemption 1: The withheld information is properly classified pursuant to Executive Order 12958.
- [ ] Exemption 2: The withheld information relates solely to the internal personnel rules and procedures of NRC.
- [ ] Exemption 3: The withheld information is specifically exempted from public disclosure by statute indicated.
  - [ ] Sections 141-145 of the Atomic Energy Act, which prohibits the disclosure of Restricted Data or Formerly Restricted Data (42 U.S.C 2161-2165).
  - [ ] Section 147 of the Atomic Energy Act, which prohibits the disclosure of Unclassified Safeguards Information (42 U.S.C. 2167).
  - [ ] 41 U.S.C., Section 253(b), subsection (m)(1), prohibits the disclosure of contractor proposals in the possession and control of an executive agency to any person under section 552 of Title 5, U.S.C. (the FOIA), except when incorporated into the contract between the agency and the submitter of the proposal.
- [ ] Exemption 4: The withheld information is a trade secret or commercial or financial information that is being withheld for the reason(s) indicated.
  - [ ] The information is considered to be confidential business (proprietary) information.
  - [ ] The information is considered to be proprietary because it concerns a licensee's or applicant's physical protection or material control and accounting program for special nuclear material pursuant to 10 CFR 2.790(d)(1).
  - [ ] The information was submitted by a foreign source and received in confidence pursuant to 10 CFR 2.790(d)(2).
- [x] Exemption 5: The withheld information consists of interagency or intraagency records that are not available through discovery during litigation. Applicable privileges:
  - [ ] Deliberative process: Disclosure of predecisional information would tend to inhibit the open and frank exchange of ideas essential to the deliberative process. Where records are withheld in their entirety, the facts are inextricably intertwined with the predecisional information. There also are no reasonably segregable factual portions because the release of the facts would permit an indirect inquiry into the predecisional process of the agency.
  - [ ] Attorney work-product privilege. (Documents prepared by an attorney in contemplation of litigation)
  - [x] Attorney-client privilege. (Confidential communications between an attorney and his/her client)
- [ ] Exemption 6: The withheld information is exempted from public disclosure because its disclosure would result in a clearly unwarranted invasion of personal privacy.
- [ ] Exemption 7: The withheld information consists of records compiled for law enforcement purposes and is being withheld for the reason(s) indicated.
  - [ ] (A) Disclosure could reasonably be expected to interfere with an enforcement proceeding (e.g., it would reveal the scope, direction, and focus of enforcement efforts, and thus could possibly allow recipients to take action to shield potential wrongdoing or a violation of NRC requirements from investigators).
  - [ ] (C) Disclosure would constitute an unwarranted invasion of personal privacy.
  - [ ] (D) The information consists of names of individuals and other information the disclosure of which could reasonably be expected to reveal identities of confidential sources.
  - [ ] (E) Disclosure would reveal techniques and procedures for law enforcement investigations or prosecutions, or guidelines that could reasonably be expected to risk circumvention of the law.
  - [ ] (F) Disclosure could reasonably be expected to endanger the life or physical safety of an individual.
- [ ] OTHER (Specify)

## PART II.B -- DENYING OFFICIALS

Pursuant to 10 CFR 9.25(g), 9.25(h), and/or 9.65(b) of the U.S. Nuclear Regulatory Commission regulations, it has been determined that the information withheld is exempt from production or disclosure, and that its production or disclosure is contrary to the public interest. The person responsible for the denial are those officials identified below as denying officials and the FOIA/PA Officer for any denials that may be appealed to the Executive Director for Operations (EDO).

| DENYING OFFICIAL | TITLE/OFFICE | RECORDS DENIED | APPELLATE OFFICIAL | | |
|---|---|---|---|---|---|
| | | | EDO | SECY | IG |
| Sandy M. Joosen | Executive Assistant, Office of the Secretary | Appendix A | | ✓ | |
| | | | | | |
| | | | | | |
| | | | | | |

Appeal must be made in writing within 30 days of receipt of this response. Appeals should be mailed to the FOIA/Privacy Act Officer, U.S. Nuclear Regulatory Commission, Washington, DC 20555-0001, for action by the appropriate appellate official(s). You should clearly state on the envelope and letter that it is a "FOIA/PA Appeal."

FOIA-2004-0160

## APPENDIX A
## RECORDS WITHHELD IN THEIR ENTIRETY

| NO. | DATE | DESCRIPTION/(PAGE COUNT)/EXEMPTIONS |
|---|---|---|
| 1. | 04/03/67 | To Hennessey from Shapar, Mandatory Hearing Requirements of Section 189 of the Atomic Energy Act; Subjection of Such Hearings to Section 5 of the APA and Section 5(a) of S. 518 (4 pages) Ex. 5 |

JONATHAN M. BLOCK
ATTORNEY AT LAW
94 Main Street
P.O. Box 566
Putney, VT. 05346-0566
802-387-2646 (vox)
-2667 (fax)
jonb@sover.net

April 27, 2004

FOIA/PA REQUEST
Case No.: 2004-004A
Date Rec'd: 04-28-04
Specialist: Pool
Related Case: 2004-0160

FOIA/PA Officer
United States Nuclear Regulatory Commission
11545 Rockville Pike
Rockville, MD 20852
Attn: FOIA/PA APPEAL
BY USPS OVERNIGHT MAIL

RE: APPEAL OF DENAIL OF FOIA/PA 2004-0160

Dear FOIA/PAA Officer:

Pursuant to the directions contained in the form 464 mailed to me in the above matter, I hereby submit the enclosed appeal of the negative determination of FOIA/PA 2004-0160. For your convenience and expedition, I have enclosed an original and five copies of the appeal.

Please let me know at once if there is anything else you require to perfect this filing.

Thank you for your continuing cooperation and assistance in this matter.

Sincerely,

Jonathan M. Block

Jonathan M. Block
Attorney for Citizens Awareness Network, Inc.

cc: Deborah B. Katz,
Executive Director
Citizens Awareness Network, Inc.



EXHIBIT 'D'

Before the
UNITED STATES NUCLEAR REGULATORY COMMISSION

*In the matter of*
US NRC DENIAL
OF FOIA/PA 2004-0160

April 26, 2004

## APPEAL OF DENIAL OF FOIA REQUEST

Petitioner, Citizens Awareness Network, Inc. [CAN], by and through its attorney, Jonathan M. Block, hereby petitions that the United States Nuclear Regulatory Commission [Commission or NRC] to reverse its denial of CAN's Freedom of Information Act [FOIA] request FOIA/PA 2004-0160. CAN contends that the NRC should take this action immediately because it erred in determining that the requested document falls under the attorney/client privilege, Exemption 5 of the NRC's FOIA regulations, and failed to act on CAN's request for expedited action in this matter. In support of this appeal, petitioner sets forth supporting facts and law.

## STATEMENT OF FACTS

1. At the beginning of February, petitioner's attorney received from the NRC Public Document Room copies of a set of documents from NRC Materials Docket

70-143 entitled "Memo to Service List, NFS-Erwin Proceeding from [Commissioner]

Peter A. Bradford" (June 27, 1980). Commissioner Bradford's memo states:

> At the public session at which the Commission action regarding this proceeding was confirmed, the NRC General Counsel was asked, after the vote was taken, whether he considered the Commission's action legal. The question, coming in the context that it did, seemed misleading as to the nature of the General Counsel's earlier advice. I therefore undertook at the meeting to make the attached documents generally available.

*Id.* Not only did an NRC commissioner distribute this set of documents to the

parties to the NFS-Erwin proceeding, the document was also placed in the NRC

public document room as part of that case docket, from which it was located upon

request by one of the PDR librarians. Public Document Request Number 05365

(January 28, 2004).

2.    One of the attachments included in this set is listed as "Memorandum to

Chairman Ahearne from Howard K. Shapar, Executive Legal Director, "Prior Notice

Requirement for Rule Change" (June 19, 1980). That document includes, in

pertinent part, the following disclosure:

> Section 189(a) of the Atomic Energy Act does not specifically state that a hearing shall be "on the record" and in conformity with the Administrative Procedure Act provisions governing adjudications (sections 5, 7, and 8). However, the legislative history of section 189 indicates that such a hearing was intended and the Commission has consistently interpreted the provision to require a trial-type hearing. The rationale for this interpretation was discussed at length in my note to Joseph Hennessey, AEC General Counsel, dated April 3, 1967. In brief, the Commission took the position that the 1957 amendment to section 189 of the Atomic Energy Act, which added a mandatory hearing requirement for the issuance of facility licenses, required the

hearing and decision to comply with the provisions of sections 5, 7 and 8 of the APA. This position was articulated, among other times, when Congress was considering some liberalization of the mandatory hearing requirement in 1961. A panel discussion among Professor Kenneth C. Davis, Professor David E. Cavers, Mr. Lee Hydeman and Dr. Theos J. Thompson was held at the conclusion of the hearings which preceded the enactment of the amendments (Radiation Safety and Regulation, Hearings before the Joint Committee on Atomic Energy, 87 Cong., 1st Sess., pp. 372-389). Professor Davis disagreed with the Commission's view that section 189 required a trial-type hearing and the exchange between Professor Davis and the Commission continued after the close of the hearings. AEC General Counsel Naiden, in a letter dated September 6, 1961 to Mr. Ramey, Executive Director of the Joint Committee on Atomic Energy, stated that "Section 189(a) of the Atomic Energy Act explicitly requires a hearing on the record conducted in accordance with the APA. For the Commission to have made any other interpretation would have been inconsistent with what we believe to have been the intent of Congress in adopting the mandatory hearing requirement." The Commission's interpretation of the mandatory hearing requirement was, in effect, ratified when Congress passed the amendments in 1962. One of these amendments added Section 191 to the Act which authorized the Commission to establish one or more Atomic Safety and Licensing Boards ["...]notwithstanding the provisions of sections 7(a) and 8(a)" of the APA. Sections 7 and 8 of the APA apply only to adjudications required to be determined on the record after opportunity for agency hearing which are subject to the provisions of section 5. Therefore, the exception to permit the use of Licensing Boards in lieu of hearing examiners would not have been necessary unless the trial-type procedures of section 5 were considered to apply to such hearings. Thus, since the adjudicatory provisions of the APA apply to NRC adjudications, the "statutory authority to conduct a legislative hearing in an NRC adjudication" would have to be found in the APA itself. Section 5 of the APA provides that its provisions apply to every adjudication "except to the extent that there is involved

    (1) a matter subject to a subsequent trial of the law and the facts de novo in a court;

    (2) the selection or tenure of an employee, except a hearing examiner appointed under section 3105 of this title;

    (3) proceedings in which decisions rest solely on inspections, tests, or elections;

(4) the conduct of military or foreign affairs functions;
(5) cases in which an agency is acting as an agent for a court; or
(6) the certification of worker representatives.

*Id.* at n4, 3-4.

3.      On March 15, 2004, after counsel's repeated searches in public databases, and, following the NRC's PDR librarians' failure to turn up the Shapar "note" to Mr. Hennessey, at the suggestion of the PDR librarians, petitioner's attorney filed a FOIA request for it. The request was made using the NRC FOIA office web-based request form. *See* Exhibit 'A' page 3-4, attached hereto.

4.      Petitioner asked for expedited action in this matter based upon the need to use the document in a court case:

> The information in this request relates directly to whether there is any truth in the NRC's claim--in support of recent rulemaking changing Part 2 adjudicatory rules--that there is no congressional requirement for formal hearing process.    If the requested record information contains the information indicated in the source for this request, a copy of the record and the information in it will be placed before a United States Court of Appeals reviewing the legality of the rule.    The information is needed as soon as possible for briefing this matter to the Court.

*Id.* The NRC ignored this request.

5.      On April 15, 2004, the FOIA office mailed an NRC Form 464 Part 1 (6-1998) denying the request and refusing to release the document based on FOIA Exemption 5, "Attorney-Client privilege. (Confidential communications between an attorney and his/her client)." See Exhibit 'B', page 2 of 3, attached hereto.

## ARGUMENT

Well established principles of law govern the invocation of attorney-client privilege:

> The burden of establishing the attorney-client privilege rests upon the party claiming it. *Fisher v. United States*, 425 U.S. 391 (1976); *Sneider v. Kimberly-Clark Corp.*, 91 F.R.D. 1, 3 (N.D. Ill. 1980). The privilege attaches:
>
> (1) where legal advice of any kind is sought
> (2) from a professional legal advisor in his capacity as such,
> (3) the communications relating to that purpose,
> (4) made in confidence
> (5) by the client,
> (6) are at his instance permanently protected
> (7) from disclosure by himself or by the legal advisor,
> (8) except the protection be waived * * * *.
>
> *United States v. Bein*, 728 F.2d 107, 112 (2d Cir. 1984), *cert. denied, sub. nom. DeAngelis v. U.S.*, 469 U.S. 837 (1984), *quoting United States v. Kovel*, 296 F.2d 918, 921 (2d Cir. 1961); accord, *In re Grand Jury Subpoena Duces Tecum*, 731 F.2d 1032, 1036 (2d Cir. 1984); *In re Horowitz*, 482 F.2d 72, 80-81 n. 7 (2d Cir. 1973) *cert. denied*, 414 U.S. 867 (1973), *reh. denied*, 414 U.S. 1052 (1973).
>
> The attorney-client privilege is triggered only by a client's request for legal, as contrasted with business advice, and is "limited to communications made to attorneys solely for the purpose of the corporation seeking legal advice and its counsel rendering it." *In re Grand Jury Subpoena Duces Tecum*, 731 F.2d at 1037. When the ultimate corporate decision is based on both a business policy and a legal evaluation, the business aspects of the decision are not protected simply because legal considerations are also involved. *SCM v. Xerox*, 70 F.R.D. 508, 517 (D. Conn. 1976).
>
> Furthermore, the privilege only protects disclosure of communications; it does not protect disclosure of the underlying facts by those who communicated with the attorney. *Upjohn Co. v. United States*, 449 U.S. 383, 395 (1981).
>
> Finally, the party who wishes to claim the privilege must take appropriate action to preserve the confidentiality of the documents. *In*

> *re Horowitz*, 482 F.2d at 82; *see also, Teachers Ins., Etc. v. Shamrock Broadcasting Co.*, 521 F. Supp. 638, 645 (S.D.N.Y. 1981).

*Hardy v. New York New, Inc.*, 114 F.R.D. 633, 644-45 (S.D.N.Y. 1987) (citations omitted). An additional consideration in this case, as it concerns an agency's invocation of the privilege, is whether the privilege should even be applied to the type of information sought under the FOIA request. *See generally*, "The Government's Attorney-Client Privilege: Should It Have One?" *Public Counsel*, Maryland State Bar Association's Public Counsel Newsletter (January 2000).

Petitioner contends that the NRC failed to protect its allegedly privileged information by failing to protect from disclosure to the public Mr. Shapar's extended discussion of the substance of his note to Mr. Hennessey. By failing to protect from public disclosure that information, the agency cannot now reasonably claim that there is any privilege protecting the remainder of the information. A party may not successfully assert the privilege when its conduct is inconsistent with an intention to keep information confidential. *See Hardy v. New York News, Inc.*, 114 F.R.D. 633, 644-45 (S.D.N.Y. 1987) (failure by counsel to segregate confidential information from general corporate files destroys privilege); *see also Donovan v. Fitzsimmons*, 90 F.R.D. 583, 585 (N.D. Ill, 1981) (when allegedly privileged documents are produced without a timely invocation of privilege, the party failing to invoke privilege is deemed to have waived any right to assert it later).

Significantly, voluntary or inadvertent disclosure of an otherwise privileged document also waives the right to assert the privilege. *In re Sealed Case,* 877 F.2d 976, 980 (D.C. Cir. 1989) ("If a client wishes to preserve the privilege, it must treat the confidentiality of attorney-client communications like jewels--if not crown jewels."). Here, the NRC's failure to make any effort to protect from disclosure Mr. Shapar's recounting of what the NRC now claims is privileged information shows that the agency did not care to protect that information. Rather than "crown jewels" the agency handled this information as if it were just another can of beans. The FOIA request at issue asks for disclosure of a document that is on the identical subject as the disclosure contained in the cited footnote to Shapar's memo--in fact, it is merely request for the very document Shapar tells Commissioner Ahearne he is summarizing. Here, where the NRC failed to invoke the privilege to protect Shapar's summary of his note to Hennessey, the waiver of privilege implicit in that disclosure is a complete bar to the NRC's assertion of privilege to all other communications regarding the same subject. *Glenmede Trust Co. v. Thompson,* 55 F.3d 476, 486-87 (3d Cir. 1995); *In re Martin Marietta Corp.,* 856 F.2d 619, 623 (4th Cir. 1988).

The NRC's failure to protect Shapar's memo to Ahearne is an 'implied' waiver of its privilege claim for the subject matter discussed in that memo. An 'implied waiver' occurs whenever a party asserting the privilege discloses the same subject matter as contained in the allegedly confidential communication to someone who is

outside the privileged relationship. *See generally*, 26A CHARLES ALAN WRIGHT & KENNETH W. GRAHAM, JR., FEDERAL PRACTICE AND PROCEDURE § 5722 (1992); *see also Sheet Metal Workers Int'l Assoc. v. Sweeney*, 29 F. 3d 120, 125 (4th Cir. 1994) (any voluntary disclosure to a person outside the privileged relationship waives the privilege); *accord, United States v. Oloyede*, 982 F.2d 133, 141 (4th Cir. 1993); *In re Martin Marietta Corp.*, 856 F. 2d at 623; *In re Grand Jury Proceeding*, 727 F.2d 1352, 1357; *United States v. Jones*, 696 F.2d 1069, 1072 (4th Cir. 1982) Jones at 1072 ("The burden is on the proponent of the attorney-client privilege to demonstrate its applicability [citations omitted].

The proponent must establish not only that an attorney-client relationship existed, but also that the particular communications at issue are privileged and that the privilege was not waived. Any disclosure inconsistent with maintaining the confidential nature of the attorney-client relationship waives the attorney-client privilege. Any voluntary disclosure by the client to a third party waives the privilege not only as to the specific communication disclosed, but often as to all other communications relating to the same subject matter. . . .)

The NRC waived its privilege when it placed Mr. Shapar's memorandum in the public document room in 1980; it reaffirmed that waiver when it provided a copy to petitioner's counsel in the instant matter. The beans have been out of the proverbial can since 1980. The NRC cannot "re-can" by merely making a contemporary assertion of the privilege. The Commission has no right to assert a

privilege now for the very same information that Mr. Shapar briefed to Commissioner Ahearne within a *publicly released* memorandum. The subject matter is, according Shapar, identical to that in the document for which the NRC is claiming privilege. The allegedly privileged "note" merely provides a more complete version of the basis for believing that Congress intended that NRC hearings take place "on the record." Given the circumstances--i.e., the NRC's recent rulemaking that the agency justifies by claiming the exact opposite and the pending petition for review of that action in the United States Court of Appeal for the First Circuit--the public interest in disclosure in and of itself should over-ride any assertion of privilege, let alone the assertion of a defective one.

The kind of disclosure that took place when Commissioner Bradford made public the Shapar memo to Ahearne accomplished a waiver of the privilege as to the specific information disclosed therein and (significantly) any privilege as to the subject mater of the disclosure. *Sheet Metal Workers Int'l Assoc.*, 29 F.3d at 125; *Oloyede*, 982 F.2d at 141; *In re Martin Marietta Corp.*, 856 F.2d at 623; *In re Grand Jury Proceedings*, 727 F.2d at 1357; *Jones*, 696 F. 2d at 1072. The "note" is the detailing of that subject matter. No privilege attaches to it now. Under these circumstances, the claim of privilege cannot stand. The document at issue should be released to the public.

CONCLUSIONS

For the foregoing reasons, the Commission should reverse its determination in this matter and order that the documents satisfying FOIA/PA 2004-160 be released to the petitioner forthwith and without any further delay.

Respectfully submitted:

CITIZENS AWARENESS NETWORK, INC.

BY: [signature]

Jonathan M. Block, Attorney at Law
94 Main Street
P.O. Box 566
Putney, VT 05346-0566
802-387-2646 (voice)
802-387-2667 (fax)
jonb@sover.net

UNITED STATES
NUCLEAR REGULATORY COMMISSION
WASHINGTON, D.C. 20555-0001

SECRETARY

May 11, 2004

Rec'd 5/21/2004
mailed by NRC 5/18/2004

Jonathan M. Block, Esq.
94 Main Street
P.O. Box 566
Putney, VT 05346-0566

IN RESPONSE REFER TO
2004-004A

Dear Mr. Block:

I am responding to your letter of April 27, 2004, to the Freedom of Information Act/Privacy Act Officer, in which you appealed the agency's April 15, 2004, response to your Freedom of Information Act (FOIA) initial request 2004-0160, dated March 15, 2004. You requested a copy of a note from Howard Shapar to Joseph Hennessey dated April 3, 1967. This record was denied on the basis of exemption 5, as attorney-client privileged information.

Without conceding that the NRC is bound by law to grant your appeal, I have decided to make a discretionary release of a portion of this document–the portion dealing with section 189a.

This is a final agency decision. As set forth in the FOIA (5 U.S.C. 552(a)(4)(B)), judicial review of this decision is available in a district court of the United States in the district in which you reside or have your principal place of business, or in which the agency records are situated, or in the District of Columbia.

Sincerely,

Annette L. Vietti-Cook
Secretary of the Commission



EXHIBIT 'F'

Ex 5

<date> 19670403 </date>
<to> Hennessey </to>
<from> Shapar, Howard </from>
<subject> MANDATORY HEARING REQUIREMENTS OF SECTION 189 OF THE ATOMIC ENERGY ACT; SUBJECTION OF SUCH HEARINGS TO SECTION 5 OF THE APA AND SECTION 5(a) OF S. 518 </subject>

DOC-NO: OGC-198

DATE: 04/03/67

TYPE: Internal OGC

TO: Mr. Hennessey

FROM: Howard K. Shapar

SUBJECT: MANDATORY HEARING REQUIREMENTS OF SECTION 189 OF THE ATOMIC ENERGY ACT; SUBJECTION OF SUCH HEARINGS TO SECTION 5 OF THE APA AND SECTION 5(a) OF S. 518

PAGES: 005

During the testimony of Arthur Gehr before the Subcommittee on Administrative Practice and Procedure of the Senate Judiciary Committee on S. 518, a bill to amend the Administrative Procedure Act, there was some discussion between him and Bernard Fernsterwald, the counsel of the subcommittee, as to whether our section 189 hearings on reactor license applications might not fall within the scope of section 5(b) of the APA, as it would read after the passage of S. 518.

Provisions of the APA and S. 518 relating to adjudications

Section 5 of the Administrative Procedure Act contains provisions (relating to, among other things, separation of functions) which are applicable 'in every case of adjudication required by statute to be determined on the record after opportunity for an agency hearing,' with certain exceptions not pertinent here. Sections 7 and 8 contain provisions applicable to hearings and decisions in cases subject to section 5. The Administrative Procedure Act does not now contain any provisions specifically applicable to adjudications other than those 'required by statute to be determined on the record after opportunity for an agency hearing,' i.e., formal adjudications.

S. 518 includes, with some important changes not relevant to the immediate discussion, the provisions applicable to formal adjudications in section 5 of the present APA in section 5(a) of the bill. In addition, a new section 5(b) would be added, applicable to 'all other adjudications' which, in general, would direct the agency to provide procedures which shall promptly, adequately and fairly inform the agency and the parties of the issues, facts and arguments involved. Section 5(b) contains no provisions relating to separation of functions. Under S. 518, sections 7 and 8 would be applicable to cases subject to section 5(a) but not to cases subject to section 5(b).

Subjection of AEC hearings under section 189 of the Atomic Energy Act to section 5 of the present APA and section 5(a) of the APA as revised by S. 518

A-1



Section 189 a. of the Atomic Energy Act provides, in pertinent part:

'The Commission shall hold a hearing after thirty days' notice and publication once in the Federal Register, on each application under section 103 or 104 b. for a construction permit for a facility, and on any application under section 104 c. for a construction permit for a testing facility.'

A mandatory hearing requirement for the issuance of facility licenses was first added to the Act in 1957 (P.L. 85-256, sec. 7). A hearing was required on each application for a license under section 103 and 104 b. and on each application for a license for a testing facility under section 104 c. While the language of section 189 a. did not then, and does not now, specifically state that the hearing and adjudication shall be 'on the record' and in conformity with sections 5, 7 and 8 of the APA, the legislative history of section 189 indicates that such a hearing and adjudication were intended, and the Commission has so interpreted the provision.

In introducing S. 1684, which contained the mandatory hearing requirement enacted in P.L. 87-256, Senator Anderson stated:

'When the Atomic Energy Act was amended 3 years ago, I made the following statement on the floor of the Senate on July 14, 1954, expressing my opinion as to the advisability of public hearings on reactor license applications:

'. . . But because I feel so strongly that nuclear energy is probably the most important thing we are dealing with in our industrial life today, I wish to be sure that the Commission has to do its business out of doors, so to speak, where everyone can see it .

'Although I have no doubt about the ability and integrity of the members of the Commission, I simply wish to be sure they have to move where everyone can see every step they take; and if they are to grant a license in this very important field, where monopoly could so easily be possible, I think a hearing should be required and a formal record should be made regarding all aspects, including the public aspects.'

'Almost 3 years have now passed and I believe my words of 1954 are still applicable.' (emphasis added) (Cong. Record, March 21, 1957, p. 3616)

In carrying out the requirement of the 1957 amendment to hold hearings in cases involving power and test reactor licenses, the Commission took the view that the hearing and decision had to be in compliance with the provisions of sections 5, 7 and 8 of the APA. The Commission's position was articulated, among other times, when amendments to the Act, which resulted, in 1962, in some liberalizing of the mandatory hearing requirement, were under consideration.

At the conclusion of the hearings which preceded the enactment of the amendments, a panel discussion among Commissioner Olson, Professor Kenneth C. Davis, Professor David F. Cavers, Mr. Lee Hydeman and Dr. Theos J. Thompson was conducted (Radiation Safety and Regulation, Hearings before the Joint Committee on Atomic Energy, 87th Cong., 1st Sess., pp. 372-389). Professor Davis took issue with the Commission's view that section 189 required a trial-type hearing. Commissioner Olson reiterated the Commission position that a formal hearing of record is required, submitting for the record an AEC memorandum in support (Id., pp. 382-5).

After the close of the hearings, the exchange between Professor Davis and the Commission continued, through letters to the JCAE staff, publication by Professor Davis of an article in the American Bar Association Journal, and replies thereto. In the course of this exchange, General Counsel naiden, in a letter dated September 6, 1961 to Mr. Ramey as executive director of the JCAE, stated that 'Section 189(a) of the Atomic Energy Act explicitly requires a hearing on the record conducted in accordance with the APA. For the Commission to have made any other interpretation would have been inconsistent with what we believe to have been the intent of Congress in adopting the mandatory hearing requirement.'

The Congress, in effect, ratified the Commission's interpretation of the mandatory hearing requirement when it passed the 1962 amendments to the Act. One of these amendments was the addition of section 191 to the Act. That section provides, in part:

'a. Notwithstanding the provisions of sections 7(a) and 8(a) of the Administrative Procedure Act, the Commission is authorized to establish one or more atomic safety and licensing boards, each composed of three members, two of whom shall be technically qualified and one of whom shall be qualified in the conduct of administrative proceedings, to conduct such hearings as the Commission may direct and make such intermediate or final decisions as the Commission may authorize with respect to the granting, suspending, revoking or amending of any license or authorization under the provisions of this Act, any other provision of law, or any regulation of the Commission issued thereunder.' (Emphasis supplied)

Since sections 7 and 8 of the APA are applicable only to adjudications required to be determined on the record after opportunity for agency hearing which are subject to provisions of section 5 of the APA, an exception from the requirements of subsections 7(a) and 8(a) to permit the use of atomic safety and licensing boards in lieu of hearing examiners would not have been necessary unless the hearings to be conducted and adjudications to be made by the boards were considered to be subject to section 5. The report which accompanied the amendments as enacted so stated the understanding of Congress in explaining the exceptions:

'This language ('notwithstanding the provisions of sections 7(a) and 8 of the Administrative Procedure Act') is intended only to provide the Commission with specific authority to use a three-man Board to preside at hearings in lieu of a hearing examiner, and to permit final, as well as intermediate decisions to be made by the Board . . .

'The great bulk of the provisions of the Administrative Procedure Act will remain applicable, pursuant to section 181 of this act, and the only exceptions authorized by these amendments are to permit the Board to preside at hearings in lieu of a hearing examiner, and to permit the Board to render final as well as intermediate decisions.' (U.S. Code, Congressional and Administrative News, 87th Cong., 2nd Sess., 1962, p. 2213)

Ex 5

4

Ex 5